IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA



| | |
|---|---|
| NETALOG, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:04CV00850 |
| | ) |
| GRIFFIN TECHNOLOGY, INC., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

Plaintiff Netalog, Inc. ("Plaintiff") brings this action for
patent infringement, trademark infringement, and various state
law violations against Defendant Griffin Technology, Inc.
("Defendant"). Pending before this court are cross motions for
partial summary judgment.[1] For the reasons stated below, the
court will grant Defendant's motion for partial summary judgment
and deny Plaintiff's motion as moot.

I. **FACTS**

Plaintiff is a corporation that markets and sells various
electronic accessories for MP3 players, such as Apple's iPod.

---

[1] The court deems these motions to be partial summary
judgment motions because neither party presents any argument or
law on why summary judgment is appropriate for the state law
claims. Under those conditions, the court finds the parties have
not appropriately moved for summary judgment on those grounds.
See L.R. 56.1(d)-(e).

Netalog has all rights to U.S. Patent No. 6,591,085 (filed July 17, 2002) ("'085 Patent"). The '085 Patent covers a device that is "[a]n FM transmitter and power supply/charging assembly electrically coupleable with an MP3 player." '085 Patent, at [57]. Specifically, the '085 Patent claims to protect

> [a]n FM transmitter and power supply/charging assembly electrically coupleable with an MP3 player, said assembly comprising a modular docking unit having a main body portion with a docking cavity therein, wherein the main body portion contains said FM transmitter and power/charging circuitry, with coupling means in the docking cavity for connecting the MP3 player with the FM transmitter and power/charging circuitry, to accommodate FM transmission by said FM transmitter of audio content when played by said MP3 player in the docking cavity of the modular docking unit, and with means for transmitting electrical power through said modular docking unit and said power/charging circuitry therein, for charging of a battery of the MP3 player and/or powering of the MP3 player.

Id. col.6 ll.2-15. In plain English, the '085 Patent's invention is a device to use and charge an MP3 player within a vehicle. The '085 Patent's device connects an MP3 player to the vehicle's 12-volt outlet, which connects electricity and then charges the MP3 player's batteries or simply supplies power to it. Furthermore, the device's integrated FM transmitter broadcasts music files from the MP3 player to the vehicle's FM receiver, thus using the vehicle's internal sound system to broadcast music files.

Plaintiff advertises TransPod, an example of the '085 Patent's device, as an "all-in-one car solution" for the Apple

2

iPod. Plaintiff first used the phrase sometime in 2002. TransPod has had commercial success, and Plaintiff has spent millions of dollars on advertisements. TransPod has even received favorable media coverage. However, one of Plaintiff's customers, Apple Computer, stopped purchasing TransPod during 2004.

Sometime during 2005, Apple Computer began selling Defendant's product. Defendant makes and sells an FM transmitter and power supply/charging assembly for the iPod called "RoadTrip." RoadTrip consists of two units that can work separately or connect and work together: a power supply/charging assembly and a separate FM transmitter. RoadTrip's separate FM transmitter can also connect to a computer and broadcast the computer's sound files to an FM receiver. Moreover, a person can use (1) the power supply/charging assembly alone to supply power to the iPod; (2) the FM transmitter alone to broadcast a desktop computer's music files; or (3) the FM transmitter and power supply/charging assembly to broadcast music and power/charge the iPod. Because of the various functions, Defendant advertises this product as an "all-in-one car solution" that can also "broadcast your Mac['s] or PC's music to any home stereo." (Conrad Decl. Ex. D at 2.) Defendant began using the "all-in-one" phrase during August 2004. Plaintiff claims Defendant's use

3

of this phrase infringes its established trademark in "all-in-one car solution."

Plaintiff also claims RoadTrip infringes the '085 Patent. Plaintiff's expert claims RoadTrip's FM transmitter is actually located in the power supply/charging assembly, thus mimicking Plaintiff's TransPod by housing the FM transmitter and power supply/charging assembly within one unit. Defendant's evidence, however, shows that the separate FM transmitter unit can transmit radio waves to an FM receiver without being connected to the power supply/charging assembly. (Birdwell Decl. ¶¶ 21-23.) Moreover, when used alone, the power supply/charging assembly has no broadcasting functions but still powers/charges the iPod. (See id. ¶¶ 24-27.) Plaintiff proffers no evidence contradicting these independent functions.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issues of material facts exist, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue does not remain for trial.

4

> When the moving party has carried its burden under Rule
> 56(c), its opponent must do more than simply show that
> there is some metaphysical doubt as to the material
> facts. In the language of the Rule, the nonmoving
> party must come forward with "specific facts showing
> that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586-87, 106 S. Ct. 1348, 1356 (1986) (citations & footnote
omitted) (quoting Fed. R. Civ. P. 56). The court must view the
facts in the light most favorable to the nonmovant, drawing
inferences favorable to that party if such inferences are
reasonable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255,
106 S. Ct. 2505, 2513 (1986). However, more than a factual
dispute must exist; the fact in question must be material, and
the dispute must be genuine. Fed. R. Civ. P. 56(c); Anderson,
477 U.S. at 248, 106 S. Ct. at 2510. A dispute is only "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." 477 U.S. at 248, 106 S. Ct. at
2510.

## III. **ANALYSIS**

The claims at issue are for patent and trademark
infringement. The following analysis considers each in turn.

A. Patent Infringement

Plaintiff first asserts that Defendant's RoadTrip infringes
the '085 Patent. In a patent infringement case, federal courts
follow a two-step process: (1) construe the "meaning and scope
of the patent claims asserted to be infringed" and (2) compare

5

the "properly construed" claims to the alleged infringing product. <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370, 116 S. Ct. 1384 (1996). Because "the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim," <u>id.</u> at 979, this opinion first construes the '085 Patent's relevant claims. The opinion next applies the construed claims to the instant facts to determine if summary judgment is appropriate.

      1.   Construction of the '085 Patent's Claims

"To ascertain the meaning of, or construe, patent claims, the intrinsic evidence of record should be considered first, <u>i.e.</u>, the patent itself, including the claims, the specification, and the prosecution history." <u>General Mills, Inc. v. Hunt-Wesson, Inc.</u>, 103 F.3d 978, 981 (Fed. Cir. 1997). The analysis must also construe the patent in the way "one [with] ordinary skill in the art at the time of the invention" would construe it. <u>Markman</u>, 52 F.3d at 986.

The court must first read the claim terms: "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Then, the court must interpret the claims as their plain language reads. <u>White v.</u>

6

Dunbar, 119 U.S. 47, 52, 7 S. Ct. 72, 74-75 (1886) ("The claim
[terms are] a statutory requirement, prescribed for the very
purpose of making the patentee define precisely what his
invention is; and it is unjust to the public, as well as an
evasion of the law, to construe it in a manner different from the
plain import of its terms.").

In construing the claim terms, "it is [also] permissible for
the district court in its sound discretion to admit and use"
extrinsic evidence such as dictionaries. Phillips v. AWH Corp.,
415 F.3d 1303, 1319 (Fed. Cir. 2005), cert. denied, ___ U.S. ___,
126 S. Ct. 1332 (2006). Dictionary definitions, however, must
not be used "in derogation of the 'indisputable public records
consisting of the claims, the specification[,] and the
prosecution history.'" Id. (quoting Southwall Techs., Inc. v.
Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir. 1995)). Moreover,

> [i]n some cases, the ordinary meaning of claim
> language as understood by a person of skill in the art
> may be readily apparent even to lay judges, and claim
> construction in such cases involves little more than
> the application of the widely accepted meaning of
> commonly understood words. In such circumstances,
> general purpose dictionaries may be helpful.

Id. at 1314 (citation omitted). The court, however, should also
consider that dictionaries "may not reflect the understanding of
a skilled artisan in the field of the patent" and were not
"created at the time of patent prosecution for the purpose of
explaining the patent's scope and meaning." Id. at 1318. The

7

dictionary, thus, is a permissible source to consider, but its use must be reasonable in light of other available evidence.

Other intrinsic aids also guide claim interpretation. For example, "[t]he [patent's] specification contains a . . . description of the invention that must enable one of ordinary skill in the art to make and use the invention. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." Markman, 52 F.3d at 979. Thus, "[c]laims must be read in view of the specification, of which they are a part." Id. However, "[t]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims." Id. at 980.

The prosecution history is also relevant: "This 'undisputed public record' of proceedings in the Patent and Trademark Office is of primary significance in understanding the claims." Id. However, as with other evidence on claim construction, the clear language found in the patent's claims limits the prosecution history's usefulness. Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 227 (1880) ("We do not mean to be understood as asserting that any correspondence between the applicant for a patent and the Commissioner of Patents can be allowed to enlarge, diminish, or vary the language of a patent afterwards issued. Undoubtedly a patent, like any other written instrument, is to be

8

interpreted by its own terms. But when a patent bears on its face a particular construction, inasmuch as the specification and claim are in the words of the patentee, it is reasonable to hold that such a construction may be confirmed by what the patentee said when he was making his application.").

The critical claim in this matter is Claim 1. Claim 1 provides that the invention has a "main body portion" that "contains" an "FM transmitter" and "power/charging circuitry." '085 Patent col.6 ll.1-6. "Contains" is the critical word in this claim, and nothing in the claim terms defines "contains." Furthermore, "contains" does not appear to be a technical term, and common-use dictionaries might illuminate possible relevant meanings for this every day, commonly understood word. "Contain" means "to keep within limits," "to have within," and to "enclose, bound." Merriam-Webster Online Dictionary, http://www.m-w.com/dictionary/contains (last visited May 17, 2006); accord Webster's Seventh New Collegiate Dictionary 180 (1970). In light of these definitions, Claim 1 describes a product in which the FM transmitter and the power supply/charging assembly are "enclosed," "bound," or "kept within" the same housing unit.

This definition does not conflict with the other relevant evidence. The patent's entire content reflects that the invention has the FM transmitter and power supply/charging assembly within one unit. The patent's other language states

9

that "[t]he present invention provides an <u>integrated</u> FM transmitter and power supply/charging assembly for an MP3 player." '085 Patent col.2 ll.64-66 (emphasis added). "Integrated" shows that this invention's critical feature is that the FM transmitter and the power supply/charging assembly are housed within one unit. Such language is consistent with Claim 1's "contains."

This construction is also consistent with the prosecution history. In his "Reasons for Allowance," the patent examiner stated he approved the '085 Patent because the patent application described, unlike other patent applications, a product that contained the FM transmitter and power/charging circuitry within one main body. Thus, that single unit allowed not only "FM transmission . . . of audio content when played by the MP3 player in the docking cavity," but also the "transmi[ssion of] electrical power through the modular docking unit . . . for charging of a battery of the MP3 player and/or powering of the MP3 player, as specified in the claim." (Birdwell Decl. Ex. 16 at 4.) Thus, in communicating his reasons for allowing the patent, the patent examiner focused on the <u>single, integrated unit</u> having <u>two separate functions</u>. In light of this evidence, Claim 1's plain language as illuminated by dictionaries, and the patent's entire content, the '085 Patent protects an invention where one module houses, contains, or holds within itself two

10

separate functions: a fully functioning FM transmitter and power supply/charging assembly.

> 2. Comparison of the Construed Claim with Defendant's RoadTrip.

Under the second step of the analysis, the court must compare Defendant's RoadTrip product with the construed claim to determine if infringement exists as a matter of law. Defendant may infringe either (1) literally or (2) under the "doctrine of equivalents." Under either theory, Defendant does not as a matter of law infringe the '085 Patent.

> i. Literal Infringement

"Literal infringement requires that every limitation of the patent claim be found in the accused infringing device." General Mills, 103 F.3d at 981. As a matter of law, this court holds that Defendant has not literally infringed the '085 Patent. Defendant's RoadTrip is two separate units, with the FM transmitter and the power supply/charging assembly being in two separate and independently functioning units. The uncontested evidence shows that the two units may function (1) separately, providing an FM transmitter for a desktop computer and a power supply/charging assembly for an iPod, or (2) together, providing a power supply/charging assembly for an iPod that broadcasts an FM signal to an FM receiver. (See Birdwell Decl. ¶¶ 22-27.)

11

ii. Doctrine of Equivalents

Defendant may infringe under the "doctrine of equivalents" by manufacturing a sufficiently, but not literally, similar product. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 117 S. Ct. 1040 (1997). Under one of the doctrine's formulations, "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Union Paper-Bag Mach. Co. v. Murphy, 97 U.S. 120, 125 (1877). Furthermore, "[t]he doctrine of equivalents does not require a one-to-one correspondence between components of the accused device and the claimed invention." Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 398 (Fed. Cir. 1994). This analysis is a fact-specific determination. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609-10, 70 S. Ct. 854, 857 (1950) ("A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness[,] and weight of evidence.").

The "all-elements" rule limits the doctrine. "The all-elements rule is that an accused device must contain every

12

claimed element of the invention or the equivalent of every claimed element." Kustom Signals, Inc. v. Applied Concepts, Inc., 264 F.3d 1326, 1333 (Fed. Cir. 2001). However, all elements must be present in some form, but not exactly the same form. Thus, "[a]n accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention." Dolly, 16 F.3d at 398. A product with additional or improved features may also still infringe a patent. See, e.g., Stiftung v. Renishaw PLC, 945 F.2d 1173, 1179 (Fed. Cir. 1991) ("[A]n improvement upon a patented device does not necessarily avoid infringement.").

Plaintiff argues Defendant's RoadTrip is equivalent to the '085 Patent's device because Defendant's base houses the power supply/charging assembly with an FM transmitting antenna. Thus, RoadTrip houses the two functions within one unit, as does Plaintiff's TransPod. The separate unit Defendant calls an "FM transmitter," Plaintiff argues, is simply an insubstantial change because the actual FM transmitter and power supply/charging assembly are within the same module. Such an insubstantial change as the separate unit should not allow Defendant to infringe Plaintiff's patented idea.

Defendant's product is more than simply the '085 Patent's device in two parts. The Patent is for a combined or integrated

13

FM transmitter and power supply/charging assembly; everything is within one unit. The undisputed evidence, including Dr. Birdwell's declaration, shows that Defendant's product is two separate units, both of which <u>function independently</u> and have separate, nonidentical functions.

Plaintiff's argument that RoadTrip is actually an FM transmitter and power supply/charging assembly does not affect this analysis. Plaintiff heavily relies upon Dr. Conrad's declaration. Dr. Conrad states:

> The antenna of the FM transmitter of the RoadTrip is contained in the base unit, not in the detachable unit. This fact is confirmed by my inspection of the RoadTrip, the produced schematics of the RoadTrip . . . and circuit schematic symbols . . ., the FCC filing made for the RoadTrip product . . .[,] and my October 14, 2005[,] antenna test report on the RoadTrip . . . .

(Conrad Decl. at 13.) Even accepting this evidence that the FM antenna may be in RoadTrip's power supply/charging assembly,[2] Plaintiff has not shown any evidence that RoadTrip is not two <u>separate</u> and <u>independently functioning</u> parts. Defendant's undisputed evidence shows that the two separate units function independently of each other—the detachable unit functions apart

---

[2]Defendant argues that Dr. Conrad's opinion is excludable because Plaintiff may have not disclosed some information properly under the discovery rules. The court expresses no opinion on this argument because it finds the evidence does not change this ruling. The court, however, does note it has serious trouble determining if the confusing assortment of schematics, test reports, and FCC reports supports this assertion without further explanation of the mechanics of these technical data.

14

from the power supply/charging assembly. RoadTrip is not, even when its two parts are connected, what the '085 Patent protects—an integrated FM transmitter and power supply/charging assembly contained in one easy-to-handle unit.

A notion that the '085 Patent covers any combination of an FM transmitter and a power supply/charging assembly imbues Plaintiff's argument. The '085 Patent, however, protects only the idea of integrating the FM transmitter and the power supply/charging assembly into one easy-to-handle device. Since Defendant's FM transmitter can work apart from the power supply/charging assembly and vice versa, RoadTrip is not integrated and does not infringe the '085 Patent by equivalence.

B. Trademark Infringement

Plaintiff next claims that Defendant's advertisements that RoadTrip is an "all-in-one car solution" infringes its similar advertisement, which Plaintiff claims to be a protected trademark. Defendant argues "all-in-one car solution" is descriptive and not protected by trademark law. Plaintiff counterargues that the phrase is protected as a suggestive mark.

"[C]ourts have categorized marks submitted for [trademark] registration into four classes in increasing order of strength or distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 933 (4th Cir. 1995). At issue here is

15

whether the phrase "all-in-one car solution" is descriptive or suggestive. "The significance of this distinction between descriptive or suggestive lies in the fact that descriptive marks are accorded trademark protection only upon proof of secondary meaning while suggestive marks are considered presumptively valid." Id. The distinction between the two types is often very slight, see, e.g., Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1528 (4th Cir. 1984), and defining a trademark as one or the other is "often made on an intuitive basis rather than as the result of a logical analysis susceptible of articulation," Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366, 379 (7th Cir. 1976).

"A 'descriptive' term 'identifies a characteristic or quality of an article or service,' as, for example, its color, odor, function, dimensions, or ingredients." Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980) (citation omitted) (quoting Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 115 (5th Cir. 1979)). "A 'suggestive' term 'suggests, rather than describes,' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." Id. at 1184 (quoting 596 F.2d at 115). Thus,

> [s]uch terms, indeed, shed some light upon the
> characteristics of the goods, but so applied they
> involve an element of incongruity, and in order to be
> understood as [describing the product], they must be

16

taken in a suggestive or <u>figurative sense</u> through an
effort of the imagination on the part of the observer.

General Shoe Corp. v. Rosen, 111 F.2d 95, 98 (4th Cir. 1940)
(emphasis added) (holding that "friendly" as applied to shoes was
suggestive and not descriptive because a consumer would use
"effort of the imagination" to connect "friendly" to a shoe
manufacturer).

The court holds that "all-in-one car solution" is
descriptive and not suggestive. "A mark to be merely descriptive
. . . need only impart directly a crucial, important aspect of
the product . . . [such as the product's] use and function."
Educational Dev. Corp. v. Economy Co., 562 F.2d 26, 29 (10th Cir.
1977). A court must consider the context of the mark when
applied to the good. See, e.g., Perini Corp. v. Perini Constr.,
Inc., 915 F.2d 121, 125 (4th Cir. 1990) ("Secondary meaning is
the consuming public's understanding that the mark, <u>when used in
context</u>, refers, not to what the descriptive word ordinarily
describes, but to the particular business that the mark is meant
to identify." (emphasis added)).

"All-in-one car solution," when used on TransPod's packaging
and other advertisements, directly imparts to the customer
crucial information about TransPod; it has all that is needed to
play and power an iPod through the vehicle's stereo system. For
a customer to understand "all-in-one car solution" when placed on
TransPod's package or used in its promotion, the customer does

17

not need to use "effort of the imagination on the part of the observer" to understand the description. <u>General Shoe</u>, 111 F.2d at 98. The mark is thus descriptive.

Descriptive marks can be protected trademarks only if the mark has acquired secondary meaning in the relevant consumer's mind. <u>See</u> 15 U.S.C. § 1052(e)(1), (f); <u>cf.</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 769, 112 S. Ct. 2753, 2758 (1992). Secondary meaning is achieved by an association between a name and a source. When this mental recognition occurs among purchasers, the name becomes legally protectable as an identification symbol." <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d 1001, 1015 (9th Cir. 1985). Determining if a mark has acquired secondary meaning entails a factorial analysis.

> Though no single factor is determinative, [courts] have held that the following factors are relevant to the question of secondary meaning: 1) advertising expenditures, 2) consumer studies linking the mark to a source, 3) sales success, 4) unsolicited media coverage of the product, 5) attempts to plagiarize the mark, and 6) the length and exclusivity of the mark's use.

<u>U.S. Search, LLC v. US Search.com Inc.</u>, 300 F.3d 517, 525 (4th Cir. 2002). "Proof of secondary meaning entails a rigorous evidentiary standard." <u>Id.</u> Furthermore, "it must be remembered that the question is not the extent of the promotional efforts, but their effectiveness <u>in altering the meaning of [the trademark] to the consuming public</u>." <u>Aloe Creme Labs., Inc. v. Milsan, Inc.</u>, 423 F.2d 845, 850 (5th Cir. 1970) (emphasis added).

18

Thus, even though circumstantial evidence can be sufficient to prove secondary meaning, such circumstantial evidence must "establish that [the mark] . . . had acquired secondary meaning in the minds of a substantial portion of the consuming public." Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc., No. 98-1653, 1999 WL 639165, at *7 (4th Cir. Aug. 20, 1999); accord FM 103.1, Inc. v. Universal Broad. of N.Y., Inc., 929 F. Supp. 187, 196 (D.N.J. 1996) ("Large advertising or promotion expenditures do not contribute to establishing a secondary meaning unless the moving party explains how its efforts were effective in causing the relevant group of consumers to associate the mark with itself." (emphasis added)). Finally, "the plaintiff has the burden to show secondary meaning (1) in the defendant's trade area and (2) prior to the time when the defendant entered the market." Perini, 915 F.2d at 125-26.

The main dispute between the parties is whether Plaintiff has established the needed link between its slogan and the consuming public. Plaintiff's evidence shows that it has expended millions of dollars in advertising, it has advertised TransPod as an "all-in-one car solution" for several years, TransPod has had commercial success, Plaintiff used the slogan for two years exclusively, other parties have appropriated the slogan as their own, and media have given unsolicited attention to the product. Defendant counterargues that since Defendant

19

began using the phrase in August 2004, Plaintiff must show its actions before that date were successful in connecting the slogan to the product in the consumer's mind. Furthermore, Plaintiff has provided no consumer survey evidence.

The court holds that Plaintiff fails to satisfy its burden to produce sufficient evidence of secondary meaning in the relevant time period. Plaintiff's evidence shows no more than TransPod's extensive advertising efforts and product popularity. Even if consumers specifically look for an "all-in-one car solution," Plaintiff's bare sales and advertisement evidence does not sufficiently show consumers associate the "all-in-one car solution" as an indicator of the product's single source. See Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387, 393 (7th Cir. 1992) (holding that "evidence of sales, advertising[,] and use" of a mark did not, alone, prove that a mark "indicates a single source to the relevant consuming public"); cf. DuPont Cellophane Co. v. Waxed Prods. Co., 85 F.2d 75, 81 (2d Cir. 1936) ("It, therefore, makes no difference what efforts or money the [party] . . . expended in order to persuade the public that [its mark] means an article of [that party's] manufacture. So far as it did not succeed in actually converting the world to its gospel it can have no relief.").

Plaintiff's evidence that its competitors use a similarly descriptive phrase ("all-in-one car solution") to describe its

20

product also does not sufficiently support secondary meaning. Proof of intentional copying of a mark creates a rebuttable presumption that secondary meaning exists. See, e.g., M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 449-50 (4th Cir. 1986). Mere use of a similar mark is not sufficient evidence of intentional copying, as Plaintiff implicitly asserts in its brief. Cf., e.g., Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 286 (6th Cir. 1997) ("[U]se of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying."); M. Kramer, 783 F.2d at 445 ("Copying is ordinarily, due to the lack of direct evidence, established by proof that the defendant had access to the plaintiff's work and produced a work that is substantially similar to the plaintiff's work."). Plaintiff's evidence is insufficient to meet this burden because nothing shows Defendant knew about Plaintiff's proposed mark.

Finally, Plaintiff proffers no other evidence showing a link in the consumer's mind that Plaintiff is the maker of the "all-in-one car solution." In general, a survey is not required. However, "[t]he authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning." Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 795 (5th Cir. 1983); accord U.S. Search, 300 F.3d at 526 n.13 ("Survey evidence is generally thought to be the most

21

direct and persuasive way of establishing secondary meaning.").
Plaintiff presents neither survey evidence nor anything
analogous.  In sum, Plaintiff fails to adduce any evidence
showing that a significant portion of relevant consumers
associates the "all-in-one car solution" with Plaintiff as its
single source.

## IV. CONCLUSION

For the reasons set forth above,

The court GRANTS Defendant Griffin Technology, Inc.'s motion
for partial summary judgment [44].

The court DENIES Plaintiff Netalog, Inc.'s motion for
partial summary judgment [48] as moot.

This the $12th$ day of June 2006.

Miriam L Osleer
United States District Judge